

## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>THOMAS J PREBIL | Case Number:  14SL-CC01419 |
| Plaintiff/Petitioner:<br>MICHAEL C ZIMMER DC PC | Plaintiff's/Petitioner's Attorney/Address:<br>MAX GEORGE MARGULIS<br>28 OLD BELLE MONTE ROAD<br>CHESTERFIELD, MO  63017 |
| Defendant/Respondent:<br>INTERGRATED PAIN MANAGEMENT SC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Injunction | (Date File Stamp) |

*vs.*

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

**The State of Missouri to:  INTERGRATED PAIN MANAGEMENT SC**
**Allas:**

200 W ADAMS ST
STE 3500
CHICAGO, IL 60606

SERVE: WILLIAM G DALUGA JR
REGISTERED AGENT

*COURT SEAL OF*

*ST. LOUIS COUNTY*

  You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
  SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>16-MAY-2014</u>
**Date**
**Further Information:**
**CNM**

_____  Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
  ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
  ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
  ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
  ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
          ☐ the judge of the court of which affiant is an officer.
          ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
          ☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

**EXHIBIT A**

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

FILED

APR 30 2014

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

STATE OF MISSOURI            )
                             )
ST. LOUIS COUNTY             )

**IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| MICHAEL C. ZIMMER, D.C., P.C., individually and on behalf of all others similarly-situated,<br><br>      Plaintiff,<br><br>v.<br><br>INTEGRATED PAIN MANAGEMENT, S.C.,<br>    Serve:  William G. Daluga, Jr.,<br>            Registered Agent<br>            200 W Adams St, Ste 3500<br>            Chicago, IL 60606<br>            Cook County<br><br>      Defendant. | Cause No. 14SL-CC01419<br><br>Division<br><br>**4**<br><br>PROCESS SERVER |

**CLASS ACTION PETITION**

Plaintiff, MICHAEL C. ZIMMER, D.C., P.C. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, INTEGRATED PAIN MANAGEMENT, S.C. doing business as Headache Control Clinic ("Defendant"):

**PRELIMINARY STATEMENT**

1.    This case challenges Defendant's practice of sending unsolicited facsimile advertisements.

1

2.      The federal Telephone Consumer Protection Act, 47 USC § 227, prohibits a person or entity from sending or having an agent send fax advertisements without the recipient's prior express invitation or permission ("advertising faxes" or "unsolicited faxes") and without a proper opt out notice.  The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3.      Unsolicited faxes damage their recipients.  An advertising fax recipient loses the use of its fax machine, paper, and ink toner.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  An advertising fax interrupts the recipient's privacy.  Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.  An advertising fax consumes a portion of the limited capacity of the telecommunications infrastructure serving the victims of advertising faxing.

4.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA, the common law of conversion and Missouri consumer and fraud and deceptive business practices act Chapter 407.

5.      Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## JURISDICTION AND PARTIES

6.      This court has personal jurisdiction over Defendant because Defendant transacts business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

2

7.     Plaintiff MICHAEL C. ZIMMER,[1] D.C., P.C., is a Missouri professional corporation with its principal place of business in Missouri.

8.     On information and belief, Defendant, INTEGRATED PAIN MANAGEMENT, S.C. is a corporation with its principal place of business in Cook County, Illinois and doing business as Headache Control Clinic.

## RELEVANT FACTS

9.     On or about the dates of July 11, 2012 and September 24, 2012, Defendant sent 2 unsolicited facsimiles to Plaintiff in St. Louis County, Missouri.  A true and correct copy of the facsimiles are attached as Exhibits A - B.

10.     The transmission sent to Plaintiff on or about July 11, 2012 and September 24, 2012 constitutes material advertising the commercial availability of any property, goods or services.

11.     On information and belief, Defendant has sent other facsimile transmissions of material advertising the commercial availability of property, goods, or services to many other persons as part of a plan to broadcast fax advertisements, of which Exhibits 1 - 2 are examples.

12.     Defendant approved, authorized and participated in the scheme to broadcast fax advertisement by  (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the faxes; (c) creating and approving the form of fax to be sent; and (d) determining the number and frequency of the facsimile transmissions.

13.     Defendant created or made Exhibits A - B and the other facsimile advertisements, which Defendant distributed to Plaintiff and the other members of the class.

14.     Exhibits A - B and the other facsimile advertisements are a part of Defendant's work or operations to market Defendant's goods or services which were performed by Defendant and on behalf of Defendant.

15.     Exhibits A - B and the other facsimile advertisements constitute material furnished in connection with Defendant's work or operations.

16.     The transmissions of facsimile advertisements, including Exhibits A - B, to Plaintiff did not contain a notice that states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph 47 C.F.R. 64.1200(a)(3)(v) of this section is unlawful.

17.     The transmissions of facsimile advertisements, including Exhibits A - B, to Plaintiff did not contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

18.     The transmissions of facsimile advertisements, including Exhibits A - B, to Plaintiff was required to contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

19.     On information and belief, Defendant sent multiple facsimile advertisements to Plaintiff and members of the proposed classes throughout the time period covered by the class definitions.

20.     On information and belief, Defendant faxed the same and other facsimile advertisements to the members of the proposed classes in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation.

4

21.    There is no reasonable means 'for Plaintiff (or any other class member) to avoid receiving unlawful faxes.   Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

22.    Defendant knew or should have known that:   (a) facsimile advertisements, including Exhibits A - B, were advertisements; (b) Plaintiff and the other members of the class had not given their prior permission or invitation to receive facsimile advertisements; (c) No established business relationship existed with Plaintiff and the other members of the class; and (d) Defendant did not display a proper opt out notice.

23.    Defendant engaged in the transmissions of facsimile advertisements, including Exhibits A - B, believing such transmissions were legal based on Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

24.    Defendant did not intend to send transmissions of facsimile advertisements, including Exhibits A - B, to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of facsimile advertisement was sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

25.    Defendant failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of facsimile advertisements, including Exhibits A - B, both to others in general, and specifically to Plaintiff.

26.    The transmissions of facsimile advertisements, including Exhibits A - B, to Plaintiff and other members of the class caused destruction of Plaintiff's property.

27.     The transmissions of facsimile advertisements, including Exhibits A - B to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class exclusive use of their property.

28.     The transmissions of facsimile advertisements, including Exhibits A - B, to Plaintiff and other members of the class interfered with Plaintiff's and other members of the class business and/or personal communications.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

29.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

30.     Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent by or on behalf of Defendant any telephone facsimile transmissions of material making known the commercial existence of, or making qualitative statements regarding any property, goods, or services (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship or (5) which did not display a proper opt out notice.

31.     A class action is warranted because:

a.      On information and belief, the class includes more than forty persons and is so numerous that joinder of all members is impracticable.

b.      There are questions of fact or law common to the class predominating over questions affecting only individual class members, including without limitation:

i.      Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

ii.     Whether Exhibits A - B and other faxes transmitted by or on behalf of Defendant contain material advertising the commercial availability of any property, goods or services;

iii.    Whether Defendant's facsimiles advertised the commercial availability of property, goods, or services;

iv.     The manner and method Defendant used to compile or obtain the list of fax numbers to which they sent Exhibits A - B and other unsolicited faxed advertisements;

v.      Whether Defendant faxed advertisements without first obtaining the recipients' prior express permission or invitation;

vi.     Whether Defendant violated the provisions of 47 USC § 227;

vii.    Whether Plaintiff and the other class members are entitled to statutory damages;

viii.   Whether Defendant knowingly violated the provisions of 47 USC § 227;

ix.     Whether Defendant should be enjoined from faxing advertisements in the future;

x.      Whether the Court should award trebled damages; and

xi.     Whether Exhibits A - B and the other fax advertisements sent by or on behalf of Defendant displayed the proper opt out notice required by 64 C.F.R. 1200.

32.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes.  Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

33.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently.  The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

34.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227(b)(1).

35.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission."  47 U.S.C. § 227(a)(4).

36.     The TCPA provides:

Private right of action.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)     Both such actions.

37.     The Court, in its discretion, may treble the statutory damages if the violation was knowing.  47 U.S.C. § 227.

38. The TCPA is a strict liability statute and the Defendant are liable to Plaintiff and the other class members even if their actions were only negligent.

39. Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's advertising faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, Defendant's actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendant's faxes cost Plaintiff time, as Plaintiff and/or its employees wasted their time receiving, reviewing and routing Defendant's unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

40. Defendant did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to interfere with recipients' fax machines or consume the recipients' valuable time with Defendant's advertisements.

41. If the court finds that Defendant knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. § 227(b)(3).

42. Defendant knew or should have known that: (A) Plaintiff and the other class members had not given express permission or invitation for Defendant or anyone else to fax advertisements about Defendant's goods or services, (B) Defendant did not have an established business relationship with Plaintiff and the other members of the class, (C) Exhibits A - B and the

other facsimile advertisements were advertisements, and (D) Exhibits A - B and the other facsimile advertisements did not display the proper opt out notice.

43.     Defendant violated 47 U.S.C. § 227 et seq. by transmitting Exhibits A - B and the other facsimile advertisements hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation and not displaying the proper opt out notice required by 64 C.F.R. 1200.

44.     Defendant knew or should have known that:  (a) documents Exhibits A - B and the other facsimile advertisements were advertisements; (b) Defendant did not obtain prior permission or invitation to send facsimile advertisements, including Exhibits A - B; (c) Defendant did not have an established business relationship with Plaintiff or the other members of the class and (d) Exhibits A - B and the other facsimile advertisements did not display a proper opt out notice.

45.     Defendant engaged in the transmissions of documents Exhibits A - B and the other facsimile advertisements believing such transmissions were legal based on Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

46.     Defendant did not intend to send transmissions of documents Exhibits A - B and the other facsimile advertisements to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of documents Exhibits A - B and the other facsimile advertisements were sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

47.    Defendant failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of documents Exhibits A - B and the other facsimile advertisements both to others in general, and specifically to Plaintiff.

48.    Defendant's actions caused damages to Plaintiff and the other class members, because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result. Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant were using Plaintiff's fax machine for Defendant's unauthorized purpose. Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing and reviewing Defendant's unauthorized faxes and that time otherwise would have been spent on Plaintiff's business activities. Finally, the injury and property damage sustained by Plaintiff and the other members of the class occurred outside of Defendant's premises. Pursuant to law, Plaintiff, and each class member, instead may recover $500 for each violation of the TCPA.

WHEREFORE, Plaintiff, MICHAEL C. ZIMMER, D.C., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, INTEGRATED PAIN MANAGEMENT, S.C., as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award between $500.00 and $1,500.00 in damages for each violation of the TCPA;

C.      That the Court enter an injunction prohibiting the Defendant from engaging in the statutory violations at issue in this action; and

D.      That the Court award costs and such further relief as the Court may deem just and proper.

E.      That the Court award pre-judgment and post-judgment interest at the statutory rate of 9%.

## COUNT II
## CONVERSION

49.     Plaintiff incorporates Paragraphs 3 and 4, 9, 12 – 15, 19 – 21 and 23 – 28 as for its paragraph 49.

50.     In accordance with Mo. S. Ct. Rule 52.08, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation.

51.     A class action is proper in that:

a.      On information and belief the class is so numerous that joinder of all members is impracticable.

b.      There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

i.      Whether Defendant engaged in a pattern of sending unsolicited faxes;

ii.     Whether Defendant sent faxes without obtaining the recipients' prior express permission or invitation of the faxes;

iii.     The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibits A - B and other unsolicited faxes;

iv.     Whether Defendant committed the tort of conversion; and

v.     Whether Plaintiff and the other class members are entitled to recover actual damages and other appropriate relief.

52.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

53.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

54.    By sending Plaintiff and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiff's employees' time to Defendant's own use.

55.    Immediately prior to the sending of the unsolicited faxes, Plaintiff, and the other class members owned an unqualified and immediate right to possession of their fax machine, paper, toner, and employee time.

56.     By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendant's own use.  Such misappropriation was wrongful and without authorization.

57.     Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

58.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose.  Plaintiff and each class member thereby suffered damages as a result of the sending of unsolicited fax advertisements from Defendant.

59.     Each of Defendant's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's unlawful faxes.  Defendant knew or should have known employees' time is valuable to Plaintiff.

60.     Defendant's actions caused damages to Plaintiff and the other members of the class because their receipt of Defendant's unsolicited faxes caused them to lose paper and toner as a result.  Defendant's actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machines for Defendant's unlawful purpose.  Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's unlawful faxes, and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, MICHAEL C. ZIMMER, D.C., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, INTEGRATED PAIN MANAGEMENT, S.C., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award costs of suit; and

D.     Awarding such further relief as the Court may deem just and proper.

**COUNT III**
**MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**Chapter 407**

61.     Plaintiff incorporates Paragraphs 3 and 4, 9, 12, 13 – 15, 19 – 21 and 23 – 28 as for its paragraph 61.

62.     In accordance with Chapter 407, Plaintiff, on behalf of the following class of persons, bring Count III for Defendant's unfair practice of sending unsolicited and unlawful fax advertisements:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation.

63.     A class action is proper in that:

a.     On information and belief the class consists of over 40 persons in Missouri and throughout the United States and is so numerous that joinder of all members is impracticable.

15

b.    There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

    i.    Whether Defendant engaged in a pattern of sending unsolicited faxes;

    ii.    The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibits A - B and other unsolicited faxes;

    iii.    Whether Defendant's practice of sending unsolicited faxes violates Missouri public policy;

    iv.    Whether Defendant's practice of sending unsolicited faxes is an unfair practice under the Missouri Merchandising Practices Act (MMPA), Chapter 407 RSMO; and

    v.    Whether Defendant should be enjoined from sending unsolicited fax advertising in the future.

64.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who are experienced in handling class actions and claims involving lawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

65.    A class action is an appropriate method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

66.    Defendant's unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other class members to incur expense without any

consideration in return. Defendant's practice effectively forced Plaintiff and the other class members to pay for Defendant's advertising campaign.

67. Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

68. Defendant's misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

69. Defendant's actions caused damages to Plaintiff and the other class members because their receipt of Defendant's unsolicited faxes caused them to lose paper and toner consumed as a result. Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant were using Plaintiff's fax machine for Defendant's unlawful purpose. Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's unlawful faxes and that time otherwise would have been spent on Plaintiff's business activities.

WHEREFORE, Plaintiff, MICHAEL C. ZIMMER, D.C., P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, INTEGRATED PAIN MANAGEMENT, S.C., as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award damages to Plaintiff and the other class members;

C.      That the Court award treble damages to Plaintiff and the other class members for knowing violations of the TCPA;

D.      That the Court declare that Defendant's conduct violated the TCPA and that this action is just and proper;

E.      That the Court award damages for conversion of the plaintiffs and the class for violation of their rights;

F.      That the Court award damages and attorney fees for violation of Chapter 407;

G.      That the Court award attorney fees and costs;

H.      That the Court award all expenses incurred in preparing and prosecuting these claims;

I.      That the Court enter an injunction prohibiting Defendant from sending faxed advertisements; and

J.      Awarding such further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

18

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone:  (847) 368-1500
Fax:  (847) 368-1501
E-Mail: bwanca@andersonwanca.com

FROM: 800-391-6688 TO: 13142913668                                07/11/12 09:25 Pg 1 of 1



*Z immer*                                                          22

# Improving The Headache Treatment

## Your FREE Practice Consultants

With extensive knowledge of head pain management, Headache Control Clinic will help You improve the headache treatment at Your clinic, *grow Your practice and significantly increase Your bottom line, with minimal effort.*

We will answer all Your questions and provide You with practice protocol and FREE online training.

### Key Benefits

· *FREE Consultation*

· *Practice protocol and FREE online training*

· *Fully reimbursed by Medicare and all PPOs*

## The New Headache Treatment

This revolutionary headache treatment protocol combines physical therapy and sphenopalatine ganglion nerve block utilizing a new approved device that provides easy access for this nerve block.

The procedure is fully reimbursed by Medicare and all PPO insurance plans, with each nerve block being reimbursable.

## Tx360®

The Tx360 is a nasal applicator device that aids the physician when applying fluid medication.  The device allows easy, safe and instant access to the uppermost area of the nasal pathway.  In particular it allows the physician to easily reach the Sphenopalatine foramen which is essential when performing a Sphenopalatine ganglion nerve block.

**www.HeadacheControlClinic.com**

## Schedule Your FREE Consultation:
# 1-800- 990-1415

| 2266 N. Lincoln Ave. Chicago, IL 60614 | 244 E. Roosevelt Rd. Lombard, IL 60148 | 5137 N. Broadway Ave. Chicago, IL 60640 | 1051 Essington Rd. #140 Joliet, IL 60431 |

**www.HeadacheControlClinic.com**

To opt out of our fax list, call 866 599 1150. The recipient may request that the sender will not send future faxes and failure to comply with your request within 30 days is unlawful.



FROM: 800-391-6688 TO: 13142913668
09/24/12 09:18 Pg 1 of 1

*Zimmer*

2l
X


**Headache Control Clinic**

# Improving The Headache Treatment

## Your FREE Practice Consultants

With extensive knowledge of head pain management, Headache Control Clinic will help You improve the headache treatment at Your clinic, *grow Your practice and significantly increase Your bottom line, with minimal effort.*

We will answer all Your questions and provide You with practice protocol and FREE online training.

### Key Benefits
- FREE Consultation
- Practice protocol and FREE online training
- Fully reimbursed by Medicare and all PPOs

## The New Headache Treatment

This revolutionary headache treatment protocol combines physical therapy and sphenopalatine ganglion nerve block utilizing a new approved device that provides easy access for this nerve block.

The procedure is fully reimbursed by Medicare and all PPO insurance plans, with each nerve block being reimbursable.

## Tx360®

The Tx360 is a nasal applicator device that aids the physician when applying fluid medication. The device allows easy, safe and instant access to the uppermost area of the nasal pathway. In particular it allows the physician to easily reach the Sphenopalatine foramen which is essential when performing a Sphenopalatine ganglion nerve block.

www.HeadacheControlClinic.com

## Schedule Your FREE Consultation:
# 1-800- 990-1415

| 2266 N. Lincoln Ave. | 244 E. Roosevelt Rd. | 5137 N. Broadway Ave. | 1051 Essington Rd. #140 |
| Chicago, IL 60614 | Lombard, IL 60148 | Chicago, IL 60640 | Joliet, IL 60431 |

**www.HeadacheControlClinic.com**

To opt out of our fax list, call 866 599 1150. The recipient may request that the sender will not send future faxes and failure to comply with your request within 30 days is unlawful.

# EXHIBIT B

STATE OF MISSOURI          )
                           )
ST. LOUIS COUNTY           )

**FILED**

APR 30 2014

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

### IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY
### STATE OF MISSOURI

MICHAEL C. ZIMMER, D.C., P.C., individually and
on behalf of all others similarly-situated,

        Plaintiff,

v.

INTEGRATED PAIN MANAGEMENT, S.C.,

        Defendant.

Cause No. 14SL-CC01419

Division

**4**

## MOTION FOR CLASS CERTIFICATION [1]

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, by

and through its undersigned counsel, and for its Motion for Class Certification, states

1.    This cause should be certified as a class because all of the necessary elements of

Rule 52.08 are met.

2.    Plaintiff requests that the Court certify a class, so the common claims of the Class

---

1.    Recent developments in class action practice make necessary the filing of this motion
with the petition. Defendants in class litigation have resorted to making individual settlement
offers to named plaintiffs before a class action is certified in an attempt to "pick-off" the putative
class representative and thereby derail the class action litigation. Most courts have rejected these
pick-off attempts and have held that the filing of a motion for class certification with the initial
petition or within a number of days after service of any settlement offer to a named plaintiff
staves off offers of judgment to the named plaintiff. Any settlement offer made after the filing of
the motion for class certification must be made on a class-wide basis. *See Alpern v. UtiliCorp
United*, 84 F.3d 1525 (8th Cir. 1996); *Weiss v. Regal Collections*, 385 F. 3d 337, 344 n. 12 (3d
Cir. 2004); *see Jancik v. Cavalry Portfolio Servs.*, 2007 WL 1994026, at *2–3 (D. Minn. July 3,
2007) *Harris v. Messerli & Kramer, P.A.*, 2008 WL 508923, at *2–3 (D. Minn. Jan. 2, 2008)
(same); *Johnson v. U.S. Bank Nat'l Assn.*, 276 F.R.D. 330, 333-335 (D. Minn. 2011) (same). *See
also Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249 (10th Cir. 2011); *Mey
v. Monitronics Int'l, Inc.*, 2012 WL 983766, at * 4-5 (N.D. W.Va. Mar. 22, 2012); *Hrivnak v.
NCO Portfolio Mgmt., Inc.*, 723 F.Supp.2d 1020, 1029 (N.D. Ohio 2010); *McDowall v. Cogan*,
216 F.R.D. 46, 48-50 (E.D. N.Y. 2003).
2.

1

members, based on a uniform legal theory and factual allegations applicable to all Class members, can be resolved on a class-wide basis.

3.      Plaintiff proposes the following Class definition:

All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages of material advertising medical and treatment services by or on behalf of Defendants.

4.      Under Rule 52.08(a)(1), to bring a Class action, the Class must be "so numerous that joinder of all members is impracticable." Rule 52.08(a)(1). Here, there are at least hundreds of persons who fall within the Class definition. Thus, the numerosity requirement of Rule 52.08(a)(1) is satisfied.

5.      There are questions of law or fact common to the Class members.

6.      The claims or defenses of the representative parties are typical of the claims or defenses of this Class.

7.      Plaintiff and its counsel will fairly and adequately protect the interest of the Class.

8.      Common issues of law or fact predominate over any individual issues, and a class action is the superior method for the fair and efficient adjudication of this controversy.

9.      The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class.

10.      The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

11.      Plaintiff requests additional time to file its supporting Memorandum of Law after the Court sets up an appropriate discovery schedule.   Written discovery related to class

certification issues is presently outstanding.

WHEREFORE, Plaintiff prays that this Court certify this case as a class action, grant statutory injunctive relief prohibiting Defendants from sending advertising materials via fax to members of the class, and further pray that the Court appoint Plaintiff as Class Representative, appoint Plaintiff's attorneys Class Counsel; that this Court allow Plaintiff additional time, for completion of discovery related to class certification issues, to file its Memorandum of Law in Support of this Motion; and for such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

_Max G. Margulis_

Max G. Margulis, #24325
MARGULIS LAW GROUP
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
P: (847) 368-1500

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the Defendant Integrated Pain Management, S.C. by the process server at the same time as the petition.

_Max G. Margulis_

3

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations In Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the partes. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.